Good morning, Your Honors. My name is Karen Bucher, and I represent James Lewis. This is the case where Mr. Lewis, who is 60 years old, pled guilty based on his counsel's repeated advice that he would receive 10 years and will not receive the statutory maximum sentence. And is 60 something we're supposed to take into account in some way? Is that too old or too young? That has to go with the prejudice problem, Your Honor, because skipping to that, had he really understood that he was exposed to 30 years, someone who is 60, to take that risk, keeping 90 when he gets out. Judge Fragerson just turned 90. He's pretty viable. Be careful when you start invoking unattached age to some issue, because I thought, quite honestly, I thought you were saying, well, you know, somebody who's 60 may not have all his faculties, and therefore he couldn't have understood what he was getting into. This is a guy who's up for a Ponzi scheme, isn't it? I understand your point, Your Honor, but I'm speaking from the perspective of my client. What is your argument that the sentence was too severe because he'll never get out, never finish it? This is an ineffective assistance of counsel claim during plea negotiations. Let me ask this question. I read the colloquy, and the sentencing judge, or the judge who took the plea into sentencing, made it clear that the statutory maximum sentences were 30 years. Now, initially, the trial judge sentenced too long on the mail fraud count, and then it got straightened out, but this is really an appeal from a denial of 2255. That's correct. So what is it about this record that would seem to suggest that the trial judge didn't fairly inform your client, the defendant, that he could go to jail for a maximum of 30 years if the statutory maximums were imposed? And I just didn't see any real support that this alleged statement by his counsel misled him or was somehow unfair. So help me understand where that is in the record. Your Honor, that is actually key to this case, and that was where I wanted to focus this argument on. The deficient advice was when the counsel met with him prior to the change of plea hearing and told him, by law, the court will have to inform you of the statutory maximum of 30 years. But he told him, just go along with it, don't worry about it, you're going to get your 10 years, it's just routine. That is the erroneous advice that he relied on. But, counsel, that's what he says. Now, this is a sophisticated guy. He's not, you know, didn't just fall off the turnip truck, right? So you're saying that he went through a plea agreement. He stood up in front of the judge and told him under oath that he understood that there was 30 years on the table. And so he relied on counsel assuring him that this was a 10-year case to ignore all of the statements, including the proffer of the government where they talked about explicitly about a 30-year possible sentence. And you're saying he just said, oh, yeah, I'm just going along with this because I know the, you know, it's a guaranteed 10 years. Based on counsel's advice. Just on counsel's statement. Yes, and that's what happened. There's case law to support this. It doesn't matter in some cases what the judge or what the government says. For example, in Gordon, the court found regardless of the information supplied by the district court and government, the defendant relied on counsel's erroneous advice regarding the case. What case? This is U.S. v. Gordon. Gordon. Okay. 156F3rd. I just want to know what the case name was. And there's also a Ninth Circuit case that says the same thing, Aiea case v. Sun, where the court found that the district court's advisement wasn't relevant because the defendant relied on counsel's advice. That's what happened before the change of plea hearing. Let me ask you this. When he changed his plea and the convict took place, was he placed under oath? He was, Your Honor. Yes. So when he's under oath and when the judge tells him about the 30 years and advises him that the sentence is solely up to the judge and asks him if anyone advised you to the contrary, he said, well, for that, no. So he was lying. So he's committing perjury, too. No, Your Honor. He was expecting that to happen based on his counsel's advice. And if you read the record, he thought what he he thought it was all arranged, he was going to get 10 years. He was under the impression it was about 10 years. There was even in the sentencing range that his attorney came up was 121 to 151 months. And when he went into that change of plea hearing, he was told this was very routine to expect the court to do this, you know, to tell him it is a statutory maximum of 30 years, because by law the court is required to do this. But that's not going to happen. You know, you will get your 10 years if you plead guilty. And there's other items in the record that support this. During the sentencing. Wait a minute. I'm going to come back. I'm looking at Gordon. And Gordon is a case where there was discussion of a plea, but counsel grossly underestimated the sentencing range. Yes. And so he pled guilty under that error. Then only after the PSR was being prepared did the counsel realize that he had made a mistake. And the court says the government hadn't provided a written plea offer or a draft plea agreement to Gordon. So all that he had was a bad estimate, an incompetent estimate. But that's not this case. This case, he said, you know, there will be 30 years, but you're not going to get that. It's 10 years. So what you're saying, coming back to why I asked the questions I did earlier, you're saying this experienced adult went through a plea agreement, went through a statement by the government, and, as Judge Pragerson adverted to himself, acknowledged that, yes, he fully appreciated that the judge could sentence him to 30 years. But he secretly, you know, because his counsel said, well, don't, you know, all of this boilerplate that everybody's going through doesn't really mean anything. That's what happened to my client. That's not Gordon. Well, in Gordon, the facts were different. The counsel had quickly advised in the letter that he could be sentenced to two terms of 120 months consecutive, but he told the client the max will be only 120. Yeah. Just like in this case, the max is 30, but you're not going to get it. And so in Gordon, he actually went to trial based on that advice. In this case, in Mr. Lewis's case, it's the opposite. He relied on his counsel's advice. You're not going to get to 30 years. Plead guilty, you're going to get to 10 years. He might as well just have gone to trial. He saved a four-month trial, a very emotional trial. This was a really sad case. A lot of people lost a lot of money. There were 1,600 victims, a large amount of money, $156 million. It was really bad. But he could have very easily gone to trial, but he didn't think he didn't believe he honestly didn't believe he was truly exposed to 30 years based on his counsel's statements. And that's the crux of the case. That's where it turns. And then he was prejudiced because he states, I would have never gone to trial. I mean, I would have never pled guilty had I known I was truly exposed to 30 years. And there's a sentencing disparity of 20 years. And the case law provides even the U.S. Supreme Court case law versus Cooper. The sentencing disparity can show prejudice. Here, there was a 20-year. He expected 10, and he got 30. And that actually shows prejudice. And even in a human entity. Another way of showing prejudice in these type of cases is the sentencing disparity of what the defendant expected and what the defendant received. It was a 20-year sentencing disparity. He expected 10 years. He got 30 years. And in his mind, he had to truly understand this is what's going to happen. This could have happened. He would have gone to trial. Why risk himself for a life sentence? And that's what happened in this case. Okay. We have your argument. Thank you. I hear from the government. Good morning. May it please the Court. I'm Greg Staples for the United States. I have nothing to add other than what's in my brief since I submitted it. Let me just ask the question. If a lawyer, let's suppose that this had not been a 60-year-old relatively sophisticated person, although the 60, as I understand the point now, does factor in. If you think you're really at risk of a life sentence, basically, your behavior would be different than if you had been assured that you were really only exposed to 10. But let's suppose that this had been a defendant who was younger but clearly at the mercy of his lawyer because he didn't have the education or background to ask questions. And the same scenario played out. That is, the 30-year-old person, a defendant clearly dependent on his lawyer, was told, don't worry, this is a 10-year case. In all my years of experience, this judge has never gone to the full statutory maximum. And wouldn't it be logical for that defendant to then, when confronted with a legal document like a plea agreement or go through the legal proceedings, to have that attorney's advice echoing in his head, yes, this is what this process appears to put us through? So even though all of the statements are made about 30 years, what the defendant is hearing is, yes, 30 years, I know that, but the real case, what I'm really going to get is 10 years. Now, what's the difference? I mean, would it all come out the same way? Just because, you know, our process through colloquy and documentation, everybody doing the kind of stuff you sign when you go to a doctor, you know, you waive all your rights, you know, there's all these risks, but you say, yeah, but it doesn't really, this isn't really going to apply to me. That's what troubles me about this case. I believe the outcome would be the same. And to use your analogy, if a district court judge was at your doctor's office and went through the disclaimer with you, that would be a markedly different situation. No, let's take that one. That wasn't a very good analogy, but I know what I'm analogizing to. I mean, people can hear the worst-case scenario, but have been assured that that's not going to happen. Okay, my response to this is twofold. First, in this case, the record shows that the judge did not simply recite the stat max as 30 years. If you look at the record, and it's on page 9 of our brief, there's a cite to it, he repeatedly said, it's 30 years. And I believe, as Judge Pregerson pointed out, he directly told the defendant, I need you to understand, as you're here today, that I could sentence you to as much as 30 years. Do you understand that? Yes, sir, I do. That's my routine. Isn't it? Not in my experience, Your Honor. That the reason it's not routine is if you look earlier in the plea colloquy, the judge began by saying, because there was no agreement as to the guideline sentencing factors, both sides were at risk. And he addressed the government first and said, without your sentencing factors, you'll have no idea or even a prediction of where I might come out on a sentence. And then he turned to the defendant and said, likewise, sir, we're at a very great risk without this agreement, and I believe that's what led to his, in my experience, more lengthy than usual discussion of the staff max to the point of asking the question, I need you to understand you could get 30 years. In my experience as a prosecutor, I don't typically hear district judges say that. And at that point you're ---- I understand. You can quote me on that. Yes, Your Honor. But the second point I've seen, the judge certainly lets the, in some of the recent matters, lets the defendant know that the sentence is up to the judge. They do. I don't ---- Well, that's probably, probably not entirely true, because the sentence is up to the U.S. attorney. That's the truth. The whole truth and nothing but the truth. I don't want my silence to stand. You started to unconvince me. My second point, and it's related to the first point, because the consistent ---- Does this lawyer ---- I don't recognize. Is he a regular ---- does he defend a lot of criminal matters down in San Diego? I'm from Orange County. He came up from San Diego. I believe that he does, but I cannot answer that with certainty. You don't know anything about him? I do not, other than my experience in dealing with him in this case. The second point ---- That's right. I'm sorry. The judge is from Central District. Yes. The second point I wanted to make in response to your question about the 30 years just being boilerplate and the defense mantra of my lawyer told me to ignore it when the judge said 30 years. Well, what did his lawyer tell him to say when the judge asked pointedly were any promises made to you? Is the implication there that he was told to lie, to perjure himself, and say that they were not? Which leads to another point that I think is telling and is not addressed anywhere in the opening reply brief, which is this case was remanded, as the Court knows, because of a technical error in the sentencing. On remand, the defendant had a new counsel, was already aware that he'd been sentenced to 30 years, asked for an evidentiary hearing to address the issue of loss, but never raised the issue he raises now about his promise. I think the inference in that is pretty clear. If he truly believed what he's telling the Court now, why didn't he raise it then? At that point, when he was remanded, he was technically no longer sentenced. He could have moved to withdraw his plea agreement, or he certainly, I believe, should have told his new lawyer, hey, I only entered into this because my old lawyer told me I would get 10 years. I think any reasonable person of any level of sophistication would have done that, and that did not occur in this case. Having already submitted, unless the Court has any more questions, I did want to address one thing. If the case is remanded, I believe there's no basis for a reassignment to a different judge. There's been no showing in the record of bias. We don't need your advice on that. Thank you, Your Honor, then I submit. Thank you. Your Honors, I'd like to address one point. I know I'm over my time. When he went back for resentencing, the Court made very, very clear that no further evidence will be entertained. The objective of the hearing will be to correct the Court's mistake in its previous sentencing. It was a very defined resentencing. And also, this is not in the record, but what happened, Mr. Lewis was transported from Arkansas, arrived the weekend before the hearing, which was on Monday morning, and had no opportunity to speak with the client. And also, another thing, 22, these ineffective assentence claims by this Circuit's law are to be brought up in 2255 appeals. I don't really, you know, maybe. What are you telling us now? I'm telling you there was no, Your Honor, there was no opportunity to raise this claim when he went back to resentencing because the Court was very. You mean when he came back for resentencing? Yes. So just some lawyer walked in the door, didn't have a chance to talk to him? Is that what you're saying? No. It was twofold. First, the Court was very clear that the hearing was going to be defined just to fix the sentence. It was just a mistake. And the second problem is the attorney didn't have an opportunity to speak with Mr. Lewis because he was transported from Arkansas. And he arrived there the weekend before and maybe met her, I don't know for how long, but no more than a couple of minutes prior to the hearing. And she was going to be there. Well, he could have asked for it. He could have said to the judge, you know, I haven't had enough time to talk to my attorney. Have some more time? He said yes. The Court was clear it wouldn't have entertained that, Your Honor, because he was very clear it was going to be a very defined sentence. I'm going to correct my mistake. And he also said nothing's going to change my mind. I'm going to resentence you to the 30 years. That was it. So the door was closed for any opportunity for him to pursue any other claims. And also in this circuit, these tough and effective assistance of counsel claims are brought on 2255 after the appeal is complete. Okay. Okay. Thank you. Thank you. The matter is submitted.
judges: Daniel, Pregerson, Fisher